IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

<table>
<tr><td>
ASSOCIATED GENERAL<br>
CONTRACTORS OF AMERICA, <em>et al.</em>,<br><br>
             Plaintiffs,<br><br>
v.<br><br>
FEDERAL ACQUISITION<br>
REGULATORY COUNCIL, <em>et al.</em>,<br><br>
           Defendants,
</td><td>
Civil Action No. 24-cv-37
</td></tr>
</table>

### SUPPLEMENTAL DECLARATION OF GEORGE ROGERS

I, George Rogers, hereby declare as follows:

1. I am Chief Executive Officer and President of RQ Construction, LLC (RQ). I offer this declaration, which supplements the original declaration I executed on September 23, 2023 in support of Plaintiffs' opposition to the government's motion to dismiss the complaint filed in the litigation captioned above. I have personal knowledge of, and am competent to testify to, the matters contained in this declaration.

2. On January 22, 2024, the government began to carry out the final agency rule implementing Executive Order 14063, which requires contractors performing on large federal sector construction contracts to operate under a particular type of collective bargaining agreement known as a Project Labor Agreement (the PLA Mandate).

3. In my initial declaration, I expressed our company's concern that the PLA Mandate would require RQ to perform all of its federal contract work under a PLA with unacceptable business terms and thereby present RQ with an impossible dilemma. In the days since January 22, those concerns have been borne out and our worst fears have been realized.

4. One of our principal concerns - that exceptions will rarely be granted to permit RQ to bid on projects without a PLA – has been made obvious by the implementation steps taken to date.

5. This includes alarming examples of the view of the procuring agencies we work with. Attached as Exh. 1 to this declaration is a true and accurate copy of an email exchange

Page **1** of **6**

between officials at RQ and Ms. Jennifer Reese in January of this year.  Ms. Reese is the Director, Planning, Design and Construction Contracting Core at Naval Facilities Engineering Systems Command (NAVFAC) Southwest, based in San Diego, and a principal point of contact for RQ.  In her email of January 17, Ms. Reese indicates that she expects exceptions will only be approved at a very senior level within the Navy only in "extreme circumstances."  Ms. Reese provides no details on what would constitute extreme circumstances.  RQ has historically done a significant amount of business with NAVFAC across the country, including in its Southwest Region.  The position reflected in this email means that RQ is extremely unlikely to be given an opportunity to bid on a project that will not require a PLA.

6.  The government's approach to conducting the market surveys required by the PLA Mandate adds to our concern.  The government has begun to issue requests for information to conduct market surveys as required by the final rule.  We have already responded to at least ten such requests received from procuring agencies including the U.S. Army Corps of Engineers and NAVFAC.  Attached as Exh. 2-5 are three examples of such responses, which include RQ's response to the questionnaires included with the requests.  RQ has incurred significant cost in the form of staff resources and other indirect costs in responding to these requests.

7.  These requests for information call for responses in an extremely short and unreasonable period of time, particularly for an open shop contractor like RQ.

8.  From our review of these requests for information, it is our belief that the questionnaires are incomplete, leaving out areas of inquiry necessary for satisfactory completion of the final rule's requirement that the agency conduct meaningful market research before deciding whether to authorize an exception.  This reinforces our belief that the agencies are not conducting and will not conduct the kind of market research necessary either to make a reasoned decision as to whether exceptions will be allowed, or how to evaluate competing bids.

9.  The following example indicates that implementation will negatively impact our ability to continue to perform work at Barksdale Air Force Base.  On January 31, 2024, NAVFAC published a request for information from contractors potentially interested in bidding on a new project at Barksdale Airforce base.  This request required a response by February 12, 2024, less than two weeks from the date of the request.  Attached as Exh. 6 is true and accurate copy of RQ's response to this request for information.   The request included a 7-part questionnaire asking for information about whether a PLA would be advisable on this project.  As with the other responses described above, RQ spent time and money looking into this request, preparing the questionnaire and submitting it to the government.   We have no reason to believe that an exception will be granted for this project.  Without an exception, RQ is unlikely to bid on this project.

10. We have yet to see either a request for information or a final solicitation that allows an exception. And we have heard nothing from any of our contacts in the procuring agencies to suggest any such exception will be forthcoming.

11. We have no reason to believe officials in the procuring agencies with which we interact support the PLA Mandate.

12. Attached as Exh. 7 is an amendment, dated January 25, regarding the large NAVFAC SE MACC II program that we are currently pursuing.  The program contemplates significant construction projects at U.S. Navy facilities located through NAVFAC SE's Area of Operations (AO), which includes, but is not limited to, the States of Florida, Georgia, Louisiana, Mississippi, South Carolina, Tennessee and Texas. Project types included within this program include 1) aviation and aircraft facilities, 2) industrial facilities, 3) barracks, dormitories and personnel housing facilities, 4) administrative facilities, 5) warehouses and supply facilities, 6) training facilities, 7) personnel support and service facilities, 8) maintenance facilities, 9) research facilities, 10) commissaries/retail, 11) medical facilities, 12) waterfront facilities, and other similar types of facilities for the areas managed by NAVFAC SE.  The task orders available under this program are extremely important opportunities for RQ in the next 5 years.   The Amendment attached as Exh 7 makes it likely that this program will include the PLA mandate, which will be extremely problematic for RQ.

13. All of this confirms my belief is that the government does not intend to allow exceptions on the type of projects that RQ would normally plan to pursue.

14. As indicated in my original declaration, it is impossible for RQ to be able to operate profitably on projects requiring a PLA.  Exceptions would be necessary for RQ to continue to participate in the federal marketplace under our current business model.

15. Another concern facing our company is the lack of sufficient time to assess whether we could submit accurate bids on projects for which there will be no exception.  Our ability to submit accurate bids is highly dependent upon receiving local subcontractor bids.  The available data supports our conclusion that a reliable base of union signatory subcontractors just does not exist near the majority of military installations where we perform most of our work.  The inability to perform such contracts with available labor makes this a national security issue; these are important projects to the military that simply cannot be built if a PLA Mandate is required.

16. The implementation steps summarized above give union signatory contractors a significant advantage over open shop contractors.  This is inconsistent with the stated intent of the final rule that the PLA Mandate will give open shop contractors an equal opportunity to compete for federal projects requiring a PLA.

17. RQ is very interested in pursuing an opportunity with the Navy's Naval Facilities Engineering Systems Command's South East contracting authority (NAVFAC SE II) for a large multi-year multi-task order program valued at $1.9 billion.  The program contemplates significant construction projects at U.S. Navy facilities located through NAVFAC SE's Area of Operations (AO), which includes, but is not limited to, the States of Florida, Georgia, Louisiana, Mississippi, South Carolina, Tennessee and Texas. Project types included within this program include 1) aviation and aircraft facilities, 2) industrial facilities, 3) barracks, dormitories and personnel housing facilities, 4)

DCACTIVE-75473536.9

administrative facilities, 5) warehouses and supply facilities, 6) training facilities, 7) personnel support and service facilities, 8) maintenance facilities, 9) research facilities 10) commissaries/retail, 11) medical facilities, 12) waterfront facilities, and other similar types of facilities for the areas managed by NAVFAC SE,  This is illustrative of the types of projects RQ typically pursues successfully, and is one of the Company's highest priorities for this year.  We have already incurred significant cost in responding to this opportunity, as well as others.  For example, current time spent on this program pursuit effort is approximately over 200 hours.

18. On January 18, 2024 NAVFAC SE issued a formal two-phased Request for Proposal (RFP) for this program.  Phase 1 proposals may be submitted by all interested contractors, stating their qualifications which NAVFAC will then use to select a shortlist for Phase 2.  At Phase 2, interested contractors that make the shortlist are required to provide their actual bid for a firm fixed price proposal for what is called the "seed" project.  The bid submitted on phase 2 will also include technical elements i.e. design and construction methods / Small Business plans, etc., in the response. The government will evaluate received bids and make an award to about 10-15 contractors who will then be able to participate in the bidding process of each task order released in the program.   RQ is very interested in this program.  We submitted our Phase 1 bid on February 20, 2024.  We are hoping that, by the time the Phase 2 bids are due, we will comfortable in knowing that awards to contractors into this program will not include a PLA.  We expect that the award of successful contractors into Phase 2 will likely be sometime in April of this year.  The identity of specific contractors awarded into the program will likely occur by September 30, the end of the federal government's current fiscal year.  As with other opportunities, we have spent time and money preparing our bid on this project

19.  The second is a significant opportunity with NAVFAC SW. The NAVFAC SW C&I MACC V is a $3B program. Examples of projects   in this program are construction projects similar in scope to: airport building, office/administrative building, communications facility, vehicle maintenance facility, armories, parking garage (paved parking lots will not be considered relevant), barracks facility, prison facility, fire station, religious building, hotel, dining facility, hospital/ medical facilities, warehouse facility, school facility, and/or retail facility. Current time spent on this program pursuit effort is also approximately over 200 hours.

20. RQ has not completely ruled out bidding on potential opportunities such as the ones mentioned above, even though we understand that we will incur significant additional PLA-related costs in doing so. Our business model demands that we continue to pursue these kinds of opportunities.

21. We have recently begun performance on a firm fixed price multiple task order contract, awarded on June 26, 2022, by the United States Navy's Naval Facilities Engineering Systems Command (NAVFAC) Southeast, located at Barksdale Air Force Base in Bossier Parish, Louisiana.  RQ has been selected to complete work on a design and build contract for a new entrance road and a new Entry Control Facility (EFC) at Barksdale Air Force Base.  If all options are exercised by NAVFAC, the cumulate task order value for

this contract is $36.9 Million.  NAVFAC is one of our largest customers, across the country and internationally.  This project is representative of the kind of work we regularly perform at Barksdale Air Force base.  It's an important part of our portfolio.  As mentioned elsewhere in this declaration, if opportunities at Barksdale will now require RQ to become party to a PLA, we will have to reassess whether we can continue to make this commitment.

22. The bids we submit for our projects are comprehensive and highly technical.  Our process for developing each bid costs between $25,000 and $100,000 in direct internal costs.  If we were forced to accept a PLA after submitting a bid, we would likely withdraw from the bidding process.  In that event, we would not be able to recover the costs of assembling the bid materials.

23. We incur these costs for every project we pursue.  For example, we are in the process of preparing a bid for a significant task new order on the NAVFAC SE MACC 1 project, Solicitation No.  N6945024RDC09, involving a large renovation project to support the Navy's Fourth Fleet operations at Naval Station Mayport, located near Jacksonville, Florida.  That bid is due on March 4.  This project supports the Navy's Fourth Fleet's (C4F) needs for  a Maritime Operation Center and Headquarters. Special construction features include AT/FP measures with Secret and Top-Secret areas within the building. Site improvements and exterior improvements are Construction - New Footprint. These improvements include a mechanical room addition, distinguished visitor entry, and AT/FP exterior barriers.  The Project will include special electronic shielding and audiovisual equipment to meet C4F mission requirements. I expect that our direct internal cost for preparing this bid will be in excess of $80,000.   RQ is currently bidding this project to become the awardee for this Task Order, for which the current estimated amount is $35M.  RQ has already been contracted into this program and we are hopeful to become the awardee for this next task order.

24. RQ's current activity with this MACC 1 program has been significant.  Our records indicate that we bid on 13 separate task orders within this this program to date, for a total bid value of more than $670M.   We were successful on six of these, with the decision pending on the Navy Fourth Fleet task order summarized above.  We incurred bid preparation and other costs on each of these 13 bids, each in the range described in paragraph 22.  The total value of the six successful bids in this program exceeds $345M. This program, and other similar MACC programs, is a critical part of our business.

25. After reviewing the final rule and observing the implementation steps taken to date, we would be extremely hesitant to bid on a new solicitation covered by the PLA Mandate. Because the entirety of our business is currently contracting for the Department of Defense, either directly or indirectly, if we are required to enter into PLAs, RQ will be effectively forced out of the federal sector.  This would result in RQ needing to either drastically restructure in order to enter a new line of business by trying to develop work in the private sector, or ceasing to operate altogether.  We can only commit to firm-fixed prices if we know we can get and control the labor to execute the project.  If the labor doesn't exist and we can't reliably train our own labor or bring in labor we've already

DCACTIVE-75473536.9

trained in from one of our other remote locations, we simply cannot commit to a firm fixed price contract.  As described above, we are facing a real dilemma.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is correct.

Executed on this _____26_____ day of February, 2024, in Carlsbad, California.


_____
George Rogers

DCACTIVE-75473536.9